

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

```
                                      )
DONNA YOUNG,                          )
                                      )
        Plaintiff,                    )
                                      )
v.                                    )    Civil Action No. 1:10-cv-1096
                                      )
HP ENTERPRISE SERVICES, LLC,          )
                                      )
        Defendant.                    )
                                      )
```

## MEMORANDUM OPINION

This matter comes before the court on Defendant HP Enterprise Services, LLC's Motion for Summary Judgment.

Plaintiff Donna Young is a former employee of Electronic Data Systems ("EDS"). She worked for EDS from August 1994 through June 2002 and returned to EDS in January 2005. Defendant HP Enterprise Services ("HP") is a subsidiary of Hewlett-Packard, which acquired EDS in 2008. Plaintiff asserts claims of sexual harassment, sex discrimination, and retaliation under the Civil Rights Act of 1964, 42 U.S.C.A. §§ 2000e-2000e(17) (West 2003 & Supp. 2011).

The Complaint alleges that Plaintiff's supervisor, Walt Gunning, physically assaulted Plaintiff by shoving her on the arm at a work meeting on November 15, 2007 after Plaintiff made

a remark to a coworker that Mr. Gunning found offensive.  Mr.
Gunning then requested that everyone leave the room so he could
speak with Plaintiff privately.  When they were alone, Mr.
Gunning told Plaintiff that he would fire her if she ever made a
comment like that again.  Plaintiff apologized for making the
comment.  After she left work that day, Plaintiff claims that
she visited a clinic because of pain from the shove.  She also
claims to have suffered nightmares, headaches, and an increase
in blood pressure as a result of the incident.

Plaintiff reported the shoving incident to Natalie Dotson,
a Human Resources Representative for EDS.  The next day,
Plaintiff reported the incident to Toshella Davis, another Human
Resources Representative for EDS.  Plaintiff asked whether Mr.
Gunning could be moved to the Herndon office so she would not
have to work with him in the Alexandria location.  Ms. Davis
advised Plaintiff that she would have the request approved by
Mr. Gunning's supervisor, but then told Plaintiff that Plaintiff
could work from home for a few days instead.

Between November 15 and mid-December 2007, EDS investigated
the shoving incident.  During the pendency of the investigation,
Mr. Gunning continued to supervise Plaintiff and she had to
continue interacting with him.  Plaintiff expressed her concerns
to Mr. Gunning's supervisor, Jan Drabczuk.  Mr. Drabczuk and Mr.

Gunning implemented a schedule to minimize Plaintiff's interaction with Mr. Gunning.

On November 30, 2007, Mr. Drabczuk received an email relaying a complaint about Plaintiff from a client representative on the PESA Account, saying that Plaintiff was "at the root of the problems" due to her "leadership by intimidation" approach.

On December 12, 2007, Plaintiff met with Mr. Drabzcuk and Natalie Dotson to discuss the outcome of the investigation into the shoving incident.  The official findings were that certain inappropriate conduct involving some degree of physical conduct had transpired.  Mr. Drabczuk proposed that (1) Mr. Gunning return to the office in the same position as prior to the assault; (2) Mr. Gunning would be instructed that he could not state any negative or inappropriate words or engage in any inappropriate conduct toward Plaintiff; (3) Mr. Drabczuk would review any future administrative actions submitted for Plaintiff by Mr. Gunning; (4) EDS would put controls in place to ensure that no such incident would occur in the future.  Mr. Drabczuk also told Plaintiff that she could look for an alternative position in the company if the solution was not satisfactory.

Mr. Drabczuk also met with Mr. Gunning to discuss the investigation.  Mr. Gunning received a written warning and was required to (1) adhere to EDS' Code of Business Conduct; (2)

3

treat all coworkers respectfully and professionally; and (3) recertify his acknowledgment of his obligations under the Code of Business Conduct.  Mr. Gunning lost his 2007 bonus because of the findings of the investigation.

On December 18, 2007 Plaintiff met with Lynne Meade in Employee Relations to discuss the issue of working with Mr. Gunning after the shoving incident, but Ms. Meade provided Plaintiff with no alternative recourse.

On January 4, 2008, Plaintiff met with EDS Executive Vice President Dennis Stokley and Chris Spiller.  Following an inquiry by Mr. Stokley into the shoving incident, Mr. Gunning was removed from the PESA account on which he worked with Plaintiff.  Although Mr. Gunning was transferred to the Herndon location, Mr. Gunning continued to interact with Plaintiff over email until he left EDS in March 2008.

On January 9, 2008, Plaintiff received an email from Mr. Drabczuk informing her that Tom Hall would be performing the Point of Contact duties on the PESA Account following Mr. Gunning's transfer.  The U.S. Army had the right to select who would be the Account Manager on the PESA Account following Mr. Gunning's removal from that position.  The Army selected Mr. Chong.  In late January 2008, Alan Chong was transferred from a position in the Herndon office to serve as Acting Account Manager.  Plaintiff alleges that responsibilities that had

4

historically been hers were usurped immediately following Mr.
Chong's placement on the account.

     In February 2008, Mr. Drabczuk received an official
complaint from the PESA Contract Manager about Plaintiff's
unprofessional conduct at a February 14, 2008 meeting.  The
email concluded by saying "the government customer should not
and does not expect to continue with this type of contracted
service."

     In March 2008, Plaintiff's request to use roll over leave
was denied.  In April 2008, Plaintiff received her 2007
performance evaluation, prepared by Mr. Gunning, and she
perceived it to be negative.  Plaintiff did not receive a salary
increase or bonus for the rest of her employment at EDS.  In May
2008, Mr. Chong denied Plaintiff the opportunity to use a fifth
week of vacation that she claimed to have secured for herself
upon her return to EDS in 2005.  Mr. Chong informed Plaintiff
that he could not give her a fifth week of vacation unless she
provided documentation to support her claim.  Plaintiff never
provided such documentation.

     In June 2008, Mr. Drabczuk received an email entitled
"Donna Young's Performance" in which the EDS executive in charge
of Army sales said "I am quite disgusted with Donna's effort in
supporting the proposal effort for the HRC ITSO opportunity."

On August 4, 2008, Plaintiff filed a charge of
discrimination ("Charge") with the Equal Employment Opportunity
Commission ("EEOC") alleging discrimination based on race, sex,
and retaliation.  In the Charge, she stated as grounds for the
alleged discrimination that Mr. Gunning had "physically
harassed" her on November 15, 2007, that she reported the
incident and received a negative performance evaluation in the
following February, and that she was passed over for a promotion
given to a less qualified male, namely Mr. Chong.

In December 2008, Mr. Chong changed Plaintiff's job title
to put her in the same job code as her peers, which Plaintiff
believes altered her salary range.

On March 4, 2009, Mr. Chong and Mike Wixtet placed
Plaintiff on an Attendance Improvement Plan ("AIP") for the
period of March 4, 2009 through May 31, 2009.  The AIP required
Plaintiff to be at work by 7:30 AM each day, have one unexcused
absence, and disallowed her from working remotely from home.

In May 2009, Mr. Chong informed Plaintiff on several
occasions that she was in violation of the AIP because she
failed to notify Mr. Chong of her late arrivals or absences.
Plaintiff took two vacation days, yet coded the days as time
worked for the client in May.  She attempted to justify her
action by claiming that it was consistent with a policy whereby
employees could substitute excess hours worked in a prior week

6

for vacation time. Mr. Chong informed Plaintiff that no such policy existed. From March 2009 through May 2009, Plaintiff claims that she complained to Human Resources about Mr. Chong's treatment of her.

In June 2009, Mr. Chong denied Plaintiff's leave request because Mr. Chong and another employee had to be out of state on business during Plaintiff's desired week off and needed her in the office.

On August 31, 2009, Mr. Chong terminated Plaintiff citing unprofessional behavior and performance issues. More specifically, Mr. Chong concluded that it was necessary to terminate Plaintiff because of her inappropriate conduct in interacting with Mr. Chong, her poor attendance, and performance issues with regard to her professional duties. Mr. Drabczuk and EDS Human Resources also concurred with his decision.

Plaintiff claims that she filed an Amended EEOC Charge on January 15, 2010.

On June 14, 2010, the Fairfax County Human Rights Commission sent a letter to Plaintiff informing her that there was insufficient evidence to support her sex, race, and retaliation allegations.

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admission on file demonstrate that there is no genuine issue of any material fact

and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56.  While the Court will construe the facts in favor of the nonmoving party, the party opposing summary judgment may not rest upon mere allegations or denials of the pleadings, but rather must set forth specific facts showing a genuine issue for trial.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).  Plaintiff has not set out facts that demonstrate any genuine issues for trial, so the Court will grant summary judgment to Defendant.

To survive summary judgment on her sexual harassment— hostile work environment claim, Plaintiff must show that (1) she experienced unwelcome harassment; (2) the harassment was based on her gender; (3) the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere; and (4) there is a basis for imposing liability on the employer.  Bass v. E.I. DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir. 2003).  To meet the second requirement, Plaintiff must demonstrate that "but for" her gender the shoving incident would not have occurred.  Gilliam v. S. Car. Dep't of Juvenile Justice, 474 F.3d 134, 142 (4th Cir. 2007).  Plaintiff has not shown that any alleged harassment was based on her gender or that it was sufficiently severe and pervasive as to alter her working conditions.

Plaintiff has not presented any evidence that establishes that Mr. Gunning shoved her on November 15, 2007 because he was motivated by hostility toward women.  See Gilliam, 474 F.3d at 143 (noting that even if plaintiff's supervisor disliked plaintiff and made plaintiff's job more stressful, that fact was insufficient to establish a prima facie case of hostile environment harassment absent evidence of bias).  To the contrary, Plaintiff admitted in her deposition that the incident occurred because Mr. Gunning was offended by the inappropriate remark that Plaintiff made in a team meeting about him. Plaintiff also acknowledged that prior to her making that remark at the meeting, she had a very good working relationship with Mr. Gunning and that he treated her like family.

To show that the working conditions were sufficiently severe and pervasive, Plaintiff must show that the workplace "was permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of her employment and create an abusive working environment."  Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993) (citing Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 65-67 (1986)).  She must also demonstrate that the workplace was subjectively and objectively hostile.  EEOC v. Sunbelt Rentals, Inc., 521 F.3d 306, 315 (4th Cir. 2008).  The Court must examine the totality of the circumstances, including the frequency and

severity of the discriminatory conduct and whether it is physically threatening or humiliating and whether it unreasonably interferes with an employee's work performance. Id.

The incident underlying Plaintiff's harassment claim as alleged in the Charge is the November 15, 2007 shove by Mr. Gunning. One isolated incident does not rise to the level of being sufficiently severe to create an abusive working environment. E.g., Meriwether v. Caraustar Packaging Co., 326 F.3d 990 (8th Cir. 2003) (affirming summary judgment for employer where male employees forcefully grabbed plaintiff's buttock because such an incident was insufficient to create an objectively hostile environment). Plaintiff's sexual harassment claim thus fails as a matter of law.

Plaintiff has also failed to make out a prima facie case of discrimination based on sex. She alleges that EDS engaged in discrimination based on her sex as evidenced by a "negative" performance evaluation, denial of her fifth week of vacation, the change of her job title, the implementation of the API, and her termination, among other things. To set forth a case of disparate treatment under Title VII, Plaintiff must show that (1) she is a member of a protected class; (2) she satisfactorily performed her job; (3) she suffered an adverse employment action despite her satisfactory performance; and (4) similarly situated

10

employees not in her protected class were treated more
favorably.  Holland v. Washington Homes, Inc., 487 F.3d 208, 214
(4th Cir. 2007).  While Plaintiff is a member of a protected
class as a female, she has not demonstrated either that she
satisfactorily performed her job or that similarly situated
employees were treated more favorably.  The evidence shows that
Plaintiff's work received numerous complaints and her supervisor
took issue with the way in which she billed time, her late
arrivals, and her unprofessional conduct.  Consequently, her
claim for discrimination based on sex fails as a matter of law.

To state a prima facie case of retaliation, Plaintiff must
show that (1) she engaged in a protected activity; (2) the
employer acted adversely against her; and (3) the protected
activity was causally connected to the employer's adverse
action.  Beall v. Abbott Labs., 130 F.3d 614, 619 (4th Cir.
1997).  Plaintiff has not established any of the elements of a
prima facie case of retaliation.

Title VII makes it unlawful for an employer to discriminate
against an employee because the employee has opposed any
practice made unlawful by Title VII.  42 U.S.C.A. § 2000e-3(a).
Nothing in Plaintiff's internal complaint about the shoving
incident raises the specter of a Title VII violation, nor does
the internal complaint allege that the incident had any relation
to Plaintiff's sex.  Plaintiff provided a separate handwritten

statement about the incident to the EDS investigator, which also contains no reference to her sex or any potential gender hostility by Mr. Gunning. Consequently, Plaintiff's internal complaint does not constitute protected activity under Title VII. See Tomanovich v. City of Indianapolis, 457 F.3d 656, 663 (7th Cir. 2006) ("Merely complaining in general terms of discrimination or harassment, without indicating a connection to a protected class or providing facts sufficient to create that inference, is insufficient.").

Furthermore, Plaintiff has not established that her employer acted adversely to her after she complained. To state an actionable retaliation claim, a plaintiff must show "that a reasonable employee would have found the challenged action materially adverse, which . . . means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006). Subsequent to Plaintiff's complaints, Plaintiff received the exact same performance rating of "Achieves Expectations" that she had received prior to the shoving incident. Receiving the same performance rating before and after making an internal complaint is not a materially adverse action. The appointment of Mr. Chong as Account Manager on the PESA Account was also not adverse, as the client, and not

Plaintiff's employer, made the selection based on its own determination.

Additionally, Plaintiff has not established a causal connection between her internal complaint and her subsequent performance evaluation or the selection of Mr. Chong as Account Manager. "Plaintiff's own self-serving opinions, absent anything more, are insufficient to establish" the required causal connection in a retaliation claim. Mickey v. Shalala, 360 F.3d 463, 469-70 (4th Cir. 2004). The Fourth Circuit has held that where at least three or four months separated the protected activity and the adverse employment action, the time period is too long to establish causation by temporal proximity alone. Pascual v. Lowe's Home Ctrs., Inc., 193 F. App'x 229, 233 (4th Cir. 2006). Five months separate Plaintiff's internal complaint and the allegedly adverse actions, which is too lengthy to establish a causal connection. Consequently, Plaintiff has not made out a prima facie case of retaliation.

Before bringing a lawsuit under Title VII, a plaintiff must exhaust available administrative remedies by filing a charge of discrimination with the EEOC or a state deferral agency. Love v. Pullman Co., 404 U.S. 522, 523 (1972). The charge determines the scope of the charging party's subsequent right to initiate a civil suit, as the suit may only encompass the discrimination stated in the charge or developed in the course of a reasonable

investigation of the charge.  King v. Seaboard Coast Line R.R.
Co., 538 F.2d 581, 583 (4th Cir. 1976).  The plaintiff must also
then obtain a right to sue letter permitting the plaintiff to
bring a suit based on claims set forth in the charge.  42
U.S.C.A. § 2000e-5(f)(1).  Plaintiff has not satisfied either
prerequisite in regard to the remaining claims set forth in the
Complaint.

The Fairfax County Human Rights Commission's Final
Investigative Report reveals that the investigation of
Plaintiff's allegations only covered the shoving incident, the
performance review that Plaintiff perceived as being negative,
and the alleged failure to name Plaintiff as Mr. Gunning's
successor.  The rest of the allegations contained in Plaintiff's
Complaint were not included in the Charge, nor were they
investigated by the Fairfax County Human Rights Commission or
the EEOC, and as a result they are barred.

For the foregoing reasons, the Court will grant summary
judgment to the Defendant.

An appropriate Order shall issue.


                                    /s/
                        _____
                        Claude M. Hilton
                        United States District Judge


Alexandria, Virginia
September  6  , 2011

14